**In re ADOPTION OF KESSLER.**

[Cite as *In re Adoption of Kessler* (1993), 87 Ohio App.3d 317.]

Court of Appeals of Ohio,
Huron County.

No. H–92–23.

Decided April 23, 1993.

*John F. Kirwan,* for appellant.

*Vickie B. Ruffing,* for appellee.

SHERCK, Judge.

This is an accelerated appeal from a judgment issued by the Huron County Probate Court in an adoption case. In this case, the probate court found that a natural father had unjustifiably failed to support and maintain his minor child for a period of at least one year and, as a result of that failure, waived his right to withhold his consent to the child's adoption. Because the trial court's findings on this issue are not supported by the record, we reverse.

Appellant, Michael D. Osborn, is the natural father of Delayne Allen Osborn. Delayne was eight years old when, in January 1992, Delayne's stepfather, appellee William Kessler, petitioned to adopt him. Instead of obtaining appellant's consent to this adoption as generally required by R.C. 3107.06(B), appellee relied on R.C. 3107.07(A) by alleging that appellant had waived his right to withhold consent because of his unjustifiable failure to provide maintenance and support for the child for a period of one year prior to the filing of the petition.

On April 28, 1992, the R.C. 3107.07(A) waiver issue came on for hearing before the trial court. At that hearing, a caseworker for the Huron County Child Support Enforcement Agency ("HCCSEA") testified that during the one-year period from January 9, 1991 to January 9, 1992, the only funds designated for Delayne's support were in the amount of $253.80. The caseworker explained that HCCSEA is permitted to intercept an obligor's federal income tax refund when the obligor's arrearage on court-ordered child support exceeds $500. Since appellant's arrearage exceeded the threshold amount, an interception was ordered, resulting in seizure of a $253.80 refund which HCCSEA forwarded to appellant's former spouse. The caseworker also testified that appellant's support arrearage at the time of the waiver hearing was $2,639.22.

Appellant's former spouse testified that during the period in question, the "check for approximately $253" was the only child support received for Delayne. Further, she disclosed that during this period Delayne had incurred substantial medical bills, which appellant had failed to pay. The former spouse did concede that before 1991, appellant had provided medical insurance for Delayne. However, at some point in 1990, the insurance carrier refused to cover medical expenses.

Appellant testified that until April 1990, he had been employed at the Norwalk Foundry Company. He then became unemployed when that firm closed. According to appellant, he was ineligible for unemployment compensation. Appellant further testified that after April 1990, his only regular employment was for a six-week period in October and November 1991. Appellant stated that for most of the one-year period he survived on general assistance payments while living with his parents or in rooms donated by friends.

On cross-examination, appellant admitted that during the period in question he had sometimes been paid in cash for odd jobs performed for his parents. Appellant conceded that he had been found in contempt for failure to pay support in June 1991. Even so, appellant stated that in the following October when he did find work he had not notified HCCSEA nor had he informed his employer that child support was to be withheld from his wages.

On redirect, appellant testified that for the entire period in question he was actively seeking work and, to that end, had participated in a two-week Huron County Social Services job program wherein he had prepared a resume and a letter of inquiry for prospective employers. The resume and inquiry letter were introduced into evidence along with a seven-page "job leads log" detailing employers whom appellant testified he had contacted for work.

In rebuttal, appellee recalled appellant's HCCSEA caseworker, who testified that the June 1991 contempt hearing resulted in a "seek work order" and that, pursuant to that order, appellant had submitted weekly forms of employment contacts to HCCSEA between July 25, 1991 and September 13, 1991. The caseworker reiterated that appellant had failed to notify the agency in October 1991 when he became employed. Appellee also recalled appellant's former spouse, who testified that at no point had she ever absolved appellant from his support obligation. Additionally, she identified the referee's report and recommendation from the June 1991 contempt hearing which was introduced into evidence.

On this evidence, the trial court took the matter under advisement and, on May 13, 1992, entered a judgment entry finding that appellee had established by clear and convincing evidence that appellant had failed to support his child for the one-year period immediately preceding the filing of the adoption petition. The court found that this failure was without justification. Therefore, the trial court determined that pursuant to R.C. 3107.07(A), appellant had waived his right to withhold consent to his child's adoption. Pursuant to Civ.R. 54(B), the trial court determined that there was no just cause for delay. From this order, appellant brings this appeal, citing a single assignment of error:

"The court erred in finding that respondent father had not justified his failure to support and thus had waived his right to withhold his consent to the adoption of his son."

The principal issue for us to decide is whether appellee met his heavy burden of proving that appellant had unjustifiably failed to support his child for a period of one year so as to extinguish appellant's fundamental parental rights. *In re Bovett* (1987), 33 Ohio St.3d 102, 104, 515 N.E.2d 919, 922.

"Our analysis must begin with the recognition that the right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law.  Adoption terminates those fundamental rights.  For this reason, we have held that ' * * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.' " (Citations omitted.)  *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 165, 23 OBR 330, 331, 492 N.E.2d 140, 141–142.

Generally, parental consent is a prerequisite to adoption.  *McGinty v. Jewish Children's Bur.* (1989), 46 Ohio St.3d 159, 161, 545 N.E.2d 1272, 1274.  A statutory exception to this general rule is created by R.C. 3107.07, which negates the need for parental consent to adoption when "the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor * * * for a period of at least one year" prior to the filing of the adoption petition or legal placement in the petitioner's home.  The exception created by R.C. 3107.07 is the codification for adoption purposes of the concept of child abandonment.  *Celestino v. Schneider* (1992), 84 Ohio App.3d 192, 196, 616 N.E.2d 581, 584.

Satisfying the statute, therefore, is not an easy task.  The petitioner for adoption who seeks to utilize the statute in lieu of a parent's consent has the burden of proving by clear and convincing evidence that the natural parent has not only failed to support the child for the statutory period but that such failure was without justifiable cause.  *In re Adoption of Masa, supra*, at paragraph one of the syllabus.  Once a petitioner has satisfied the first prong of the test, the burden of going forward with the evidence "shifts to the natural parent to show some facially justifiable cause for such failure." *In re Adoption of Bovett, supra*, at paragraph two of the syllabus.  Even so, the ultimate burden of proof remains with the petitioner.  *Id.*  It should be noted, however, that the trial court's inquiry is directed to the *"entire duration* of the failure." (Emphasis *sic.*)  *Id.*, 33 Ohio St.3d at 106, 515 N.E.2d at 923.  Therefore, a parent must justify his or her failure to support for substantially the entire one-year period.  It is not enough to show that some time during the year a failure to support was justified.

It must be demonstrated that no modicum of support reasonably could have been provided at any time during the year. *Id.*

The case at bar presents questions about both prongs of the *Masa/Bovett* test. Those questions are (1) whether monies involuntarily intercepted from an individual's federal income tax refund, but, nevertheless, used to support a minor child, constitute "support," and (2) assuming, *arguendo,* that a tax intercept does not constitute "support," whether the petitioner has met his burden to prove that such lack of support was unjustifiable.

The finding of the probate court "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of Bovett, supra,* at paragraph four of the syllabus, following *In re Adoption of Masa, supra,* at paragraph two of the syllabus. A determination is not against the manifest weight of the evidence when it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

## I

It is uncontested that during the one-year period payment of $253.80 was received by Delayne's custodial parent for purposes of his support. This money had been obtained by the Huron County Child Support Enforcement Agency by intercepting appellant's federal income tax refund.

Ohio courts and this court have repeatedly held that any contribution toward child support, no matter how meager, satisfies the maintenance and support requirements of R.C. 3107.07(A). *Celestino v. Schneider, supra; In re Adoption of Pinkava* (Jan. 13, 1989), Lucas App. No. L–88–034, unreported, 1989 WL 1614; *In re Adoption of Mohr* (Mar. 25, 1988), Lucas App. No. L–87–199, unreported, 1988 WL 36175; *In re Adoption of Salisbury* (1982), 5 Ohio App.3d 65, 5 OBR 161, 449 N.E.2d 519.

Appellee, citing *In re Adoption of Rantamki* (Mar. 30, 1990), Astabula App. No. 88–A–1422, unreported, 1990 WL 36564, argues that because the money in this matter was derived from intercepting appellant's tax refund rather than derived from withholding his wages, the character of the money changes so as to make it something other than a payment for support and maintenance. We disagree. The decision in *Rantamki* was based, not on the source of the money, but rather on the fact that it was dispersed to the county department of human services to offset previously received welfare payments. None of the money from

the *Rantamki* tax refund intercept appears to have been used for the current support of the child.[1]  Therefore, *Rantamki* is factually distinguishable.

To hold that a court may terminate parental rights based upon an amorphous notion of the degree of the voluntariness of the support would be to chart a perilous course.  Is a court-ordered wage withholding more or less coercive than a court order requiring a parent to establish and maintain a savings account which would be subject to levy?  Are either of these orders more voluntary than executing upon a federal income tax refund?  If an ex-spouse forecloses on real property based upon arrearages which were reduced to judgment and obtains a large monetary sum, is this not to be considered support for R.C. 3107.07(A) purposes?

Today, the methods are many and varied for collecting and paying child support.  How do we draw the line in determining whether a payment was voluntary, somewhat voluntary, somewhat involuntary, or involuntary?  The answer is simple: we do not.  In this case, during the year immediately preceding the filing of the petition for adoption, appellant's federal income tax refund check of $253.80 was paid to HCCSEA, credited to appellant's account, and transferred by separate check to appellant's former spouse as child support.  We find that this payment constitutes support and, therefore, R.C. 3107.07(A) is not activated.  The trial court's contrary determination is not supported by the record on review.

## II

■    Assuming, for the sake of argument, that appellant failed to support his child during the statutory period, it must then be determined whether such a failure was unjustifiable.  During the hearing on this matter appellant testified that he had become unemployed when the plant at which he worked closed.  Appellant testified that after the plant closed he sought, but was unable to find, employment.  He did some odd jobs producing minimal income, and, in the fall of 1991, he obtained a job that lasted six weeks.  In support appellant introduced job search records, a copy of his resume, and a letter of introduction from a job placement specialist.  Absent the total rejection of appellant's testimony and evidence, which is not indicated in the trial court's findings, we must conclude that appellant met his burden of going forward with the evidence by showing "some facially justifiable cause" for his nonsupport, *In re Adoption of Bovett, supra;* see, also, *In re Adoption of Lay* (1986), 25 Ohio St.3d 41, 44, 25 OBR 66,

---

1.  The *Rantamki* court also noted that the payment was not voluntary, but this does not appear to be the reason for that court's decision.  In any event, it is not clear that voluntary payment is a statutory requisite.

69, 495 N.E.2d 9, 12, at least for forty-six weeks of the year.[2]  With respect to the remaining six weeks, there was no testimony about the amount appellant earned during that period.[3]  Once appellant met his burden of going forward, the burden of proof remained with appellee to show by clear and convincing evidence that appellant's justification was illusory.  Appellee simply failed to present any evidence which would tend to establish this.  Appellee presented evidence of the minor child's need for the support money, but showing a need for support does not go to appellant's ability to pay.  Likewise, the fact that the domestic relations court referee attached a conditional contempt finding to a seek-work order is simply not dispositive of anything.

Appellant's justification for his failure to pay support is uncontroverted.  Therefore, the trial court's finding that appellant's failure to support was unjustifiable is not supported by the evidence.  Accordingly, appellant's sole assignment of error is well taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Huron County Probate Court is reversed.  It is ordered that appellee pay court costs of this appeal.

*Judgment reversed.*

GLASSER, P.J., concurs.

MELVIN L. RESNICK, J., concurs in judgment only.

---

**2.**  It should be noted that this conclusion is supported by the judgment entry of the June 1, 1991 domestic relation referee's finding appellant in contempt.  The order tacitly finds that appellant was unemployed and holds him in contempt for failure to pay support.  The ten-day sentence is suspended on condition that appellant seek work and report his efforts to HCCSEA.  Appellant's later brief employment is apparently the result of that order.

**3.**  Appellant was asked on cross-examination about the disposition of his income for this period.  Appellant stated that he paid collection agencies for medical debts.