OPINION
Appellant Brandi Bowersock appeals the decision of the Belmont County Probate Court which permitted the stepparent adoption of her children without her consent upon the grounds that she failed to communicate with and/or failed to support her children for the one year period contemplated by R.C. 3107.07(A). In deciding this appeal, we are generally called upon to determine the parameters of said statutory provision and to specifically determine: (1) whether three greeting cards and/or a videotaped message from Brandi to her children constitutes a "communication" sufficient to defeat her forfeiture of parental rights; and (2) whether the payments of child support by a third party without the knowledge or direction of the obligor of the support order can constitute a satisfaction of the requirement to provide for the children's maintenance and support in sufficient degree so as to negate the non-consent operation of R.C. 3107.07(A). Since we determine each of those issues in the affirmative, the contrary conclusions of the trial court are reversed pursuant to the law and reasoning hereinafter set forth.
 BACKGROUND
Ms. Bowersock was divorced from her husband, Jason Wells, on November 30, 1998. Mr. Wells was awarded custody of the parties two children, and Ms. Bowersock was ordered to pay child support in the amount of $25 per month. Ms. Bowersock was permitted to exercise visitation only if accompanied by her parents with whom she lived. Mr. Wells remarried in January 2000, and he moved his two children in with Mrs. Wells and her three children. Ms. Bowersock exercised her last visitation on June 24, 1999. Shortly thereafter, due to phone calls she made to Mr. and Mrs. Wells, she was informed that she could no longer call the Wells residence. Later, visitation was changed, granting visitation to her parents at her exclusion. Apparently for these reasons and the fact that her probation was being revoked for failure to attend drug and alcohol counseling, Ms. Bowersock left town on July 13, 1999.
She returned on June 19, 2000 and turned herself in to the authorities in Belmont County for her probation violation. She was incarcerated from that time until her release on July 19, 2000. On August 28, 2000, the Wells filed a petition for a step-parent adoption of the two Wells children, ages two and one-half and almost four years old at that time. The petition stated that Ms. Bowersock has no visitation rights, has not personally paid child support, and has been incarcerated twice within the last two years. After an objection and motion to dismiss was filed by Ms. Bowersock, the petition was amended to add check marks on the form next to two different statutory reasons that the adoption could proceed without the consent of Ms. Bowersock; these newly added reasons were failure to communicate and to provide maintenance and support for the year prior to the filing of the petition.
On October 31, 2000, the case was tried to the court. On November 6, 2000, the court released its decision finding that the consent of Ms. Bowersock was not required as she failed to communicate with the children without justifiable cause in the year prior to the filing of the petition. Specifically, the court stated the three cards and a video constitutes minimal and indirect contact that is insufficient to satisfy the statute. The court also found that her consent was not required because she failed to personally provide maintenance and support without justifiable cause in the year prior to the filing of the petition, although the court noted that her support obligation was paid by her parents. Ms. Bowersock (hereinafter appellant) filed the within timely appeal.
 GENERAL LAW
Pursuant to R.C. 3107.07(A), consent to adoption is not required when:
 "A parent of a minor, when it is alleged in the petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
The burden of proof in such cases requires the petitioner to prove by clear and convincing evidence that consent is not required for at least one of the aforementioned reasons. See, e.g., In re Adoption of Bovett
(1987), 33 Ohio St.3d 102, 104; In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error provides:
 "THE TRIAL COURT'S DETERMINATION THAT RESPONDENT-APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH THE SUBJECT CHILDREN IN THE ONE YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant contends that a failure to communicate within a year prior to the filing of the petition was not established by clear and convincing evidence. The time period evaluated by the probate court was the year preceding August 28, 2000, the date on which the original petition was filed. Appellant testified that she sent two Christmas cards and a New Years card to her children at her parents address during the Christmas season of 1999. These cards were submitted into evidence. Appellant's mother stated that she received these cards and read them to the children. Appellant also testified that she made a video of herself for her children at her parents' house on Saturday August 19, 2000. Her father testified that he set the camera up for her and pressed record. On this video, appellant talks to the children and hands presents to the screen. Both of appellant's parents testified that they watched the video with the children at the next grandparents' visitation, which occurred at least every other weekend, and presented the children with appellant's gifts as her image on the screen pushed the presents forward.
The probate court found that appellant sent three cards to her parents house during the 1999 Christmas season. The court also found that appellant gave her parents the videotape on August 19, 2000. However, the court concluded that such contact was minimal, indirect[1] and insufficient, citing In the Matter of the Adoption of Chamoun (Oct. 31, 1990), Mahoning App. No. 89CA115, unreported.
 LAW ANALYSIS ON COMMUNICATION
In Chamoun, we noted that the probate court found, "there were no phone calls, letter, birthday cards or gift, Christmas cards or gifts or other communication with the children." The probate court then evaluated an event that the father alleged constituted a communication and found that the event was "best described as a viewing." The probate court found no evidence of communication and thus allowed the adoption to proceed without the father's consent. This court affirmed the probate court's decision, stating that it was not against the manifest weight of the evidence to determine that clear and convincing evidence established a failure to communicate. Id.
We fail to see how a cite to Chamoun supports the trial court's decision in the case at bar. The court in Chamoun references cards as if they would have constituted communication. Moreover, if the court found that the event alleged to be communication was merely a viewing, then no communication occurred. To communicate is to convey an idea from one mind to the next. Viewing children conveys nothing; however, writing in cards conveys ideas, as does speaking on a video tape.
This court later decided the case of In re Wilson (Feb. 13, 1995), Jefferson App. No. 93J12, unreported, where we again implied that if the children received cards sent to them by their parent, this would constitute communication under R.C. 3107.07(A). Id. (but upholding the court's adoption decision because the court believed testimony that the children did not receive cards in the year preceding the petition and disbelieved the father's testimony that he sent cards). See, also, In reDoe (1997), 123 Ohio App.3d 505, 509 (where the ninth district found a lack of communication because, although cards where sent by the grandparent to the child, the parent was not involved in the drafting or sending of these cards and, thus, the court implied that had the parent been involved in the card sending decision, communication would have occurred); In re Adoption of Hupp (1982), 9 Ohio App.3d 128, 130-31
(where the eighth district stated that a birthday card constitutes communication); In re Christie (Mar. 12, 1997), Wayne App. No. 96CA49, unreported (where the ninth district held, "[a] birthday card conveys information" and found communication especially where that card contained a letter and photographs); In re Adoption of Kinsley (Aug. 17, 1983), Fayette App. No. 82CA23, unreported (where the twelfth district held that birthday cards sent by the parent and received by the child constitute communication).
Some courts imply, by citing dicta in Justice Douglas' dissent inBovett, that a mere birthday or Christmas card is not enough to preserve a natural parent's right to withhold consent for an adoption of their children. Stating that this form of communication is insufficient, however, results in the addition of modifiers to the word "communicate" and are subjectively deciding what constitutes a communication. That judicial practice, however, was rejected by the Ohio Supreme Court inHolcomb, 18 Ohio St.3d at 366.
In Holcomb, the Court determined that the legislature intended to adopt an objective test for analyzing a failure of communication by purposely avoiding the confusion which would necessarily arise from subjective analysis and application of terms such as meaningful, substantial, significant or regular to the bare legislative term "communicate." Id. (opining that the legislature opted for certainty). The Court reminded that it is not the function of courts to add to clear legislative language, especially where the statute is to be strictly construed to avoid the loss of a fundamental liberty interest that natural parents have in their children. Id. at 366-67. Finally, the court specified, "pursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without that parent's consent only if there is a complete absence ofcommunication for the statutorily defined one-year period." Id. (Emphasis added).
The probate court in the case at bar found that communication occurred but then subjectively characterized that communication as minimal, indirect and insufficient. Under Supreme Court precedent and the above analysis, this characterization was an error of law. Accordingly, this assignment of error is sustained, and the probate court's decision that appellant failed to communicate with her children in the year preceding the filing of the petition is reversed. We must proceed to the next assignment of error because even if the parent communicated with their child, the court may still find that consent is not required for adoption as a result of a failure to provide maintenance and support.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error provides:
 "THE TRIAL COURT'S DETERMINATION THAT RESPONDENT-APPELLANT FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE MAINTENANCE AND SUPPORT FOR THE SUBJECT CHILDREN IN THE ONE YEAR PRIOR TO THE FILING OF THE PETITION FOR ADOPTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant testified that after her divorce in November 1998, she moved in with her parents who provided her with food, shelter and clothing as she was not employed. Her parents also began to pay her child support obligation in full each month for her. She testified that after she left town in July 1999, she thought her parents were still paying child support on her behalf and that she was assured that they were paying it in July 2000, after she had returned to town and been released from jail and before the petition for adoption was filed.
There is no allegation that an arrearage exists. In fact, the probate court found that appellant's parents paid the monthly child support that appellant had been ordered to pay. However, the court still found that appellant failed to provide for the maintenance and support of her children for the year preceding the petition. The issue before us is whether the satisfaction of a child support obligation by the obligor's parents, who are under no duty to so satisfy, constitutes the provision of maintenance and support so as to require the parent's consent for adoption of her child.
 LAW ANALYSIS ON PROVISION OF MAINTENANCE AND SUPPORT
Pursuant to R.C. 3107.07(A), consent is not required if the parent failed without justifiable cause "to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year" immediately preceding the filing of the adoption petition. Two things stand out to this court as relevant to the case at bar in the above passage. First, the statute says, "to provide for." One can "provide for" their child's support without personally writing a check and even without spending their own money. Secondly, the statute references a "judicial decree" which requires that support be paid. The judicial decree of child support pertinent to this case was satisfied on appellant's behalf. Support was paid to her children in a timely and regular manner; no arrearage existed.
As for the issue of the voluntariness of the payment, it has been held that interception of a tax refund check and subsequent paying of the check to the obligee constitutes providing support under the statute even though there was no voluntary payment by the obligor. In re Adoption ofKessler (1993), 87 Ohio App.3d 317, 323. Although the case of a tax intercept could be distinguished because the tax refund technically was derived from funds of the obligor, this does not mean that a donor cannot satisfy a donee's child support obligation and thereby avoid adoption of the donee's children under the statutory provision dealing with failure to support. Appellant's children were "provided for" monetarily. Regardless of the source of the funds, child support was received by the Child Support Enforcement Agency in the amount appellant was ordered to pay, and that support was credited to appellant's name. See In re Adoptionof Alexander (Sept. 29, 1995), Darke App. No. 1366, unreported (noting that the fact that the obligor never had custody of the funds paid to the Child Support Enforcement Agency by his mother is irrelevant as long as the funds were deposited to his credit, in a case where the payments to the agency on behalf of the obligor were partly compensation for house work and partly simple gifts). Thus, appellant provided for the maintenance and support of her children as required by judicial decree. If she did not wish to provide for the maintenance and support of her children, she would have asked her parents, who provided her with support in multiple ways, to discontinue making child support payments on her behalf.
The court erred by finding that satisfaction of appellant's child support obligation by her parents did not negate a finding of a failure to provide maintenance and support as required by judicial decree. Accordingly, this assignment of error has merit.
For the foregoing reasons, the decision of the trial court is reversed. At this time, appellant's children cannot be adopted without her consent. This case is hereby remanded with orders to nullify the adoption certificate and dismiss the case.
WAITE, J. and DeGENARO, J., concurs.
[1] We note that testimony by Mrs. Wells suggests that appellant was prohibited from calling the house of her children by a restraining order. Appellant testified that police informed her that she could not call. We also note that testimony established that, at some point in time, appellant's visitation rights were discontinued and, at other points in time, appellant was incarcerated.