DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court, Probate Division, judgment. The court determined that Caitlyn Marie Payne's adoption could proceed without the consent of her mother, Melissa Payne, appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT MELISSA PAYNE FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE SUPPORT TO HER MINOR CHILD DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S FINDING THAT APPELLANT MELISSA PAYNE FAILED WITHOUT JUSTIFIABLE CAUSE TO PROVIDE SUPPORT TO HER MINOR CHILD DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S FINDING THAT APPELLANT MELISSA PAYNE FAILED WITHOUT JUSTIFIABLE CAUSE TO COMMUNICATE WITH HER MINOR CHILD DURING THE ONE YEAR PERIOD PRIOR TO THE FILING OF THE PETITION FOR ADOPTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Caitlyn Marie Payne was born January 2, 1997, and is the natural daughter of appellant and Mitchell J. Potts. Seven months after her birth, Washington County Children Services (WCCS) removed Caitlyn from the home and placed her with her maternal great aunt, Brenda Way, petitioner below and appellee herein.
On May 27, 1998, appellee filed a petition for custody of her great niece. The trial court granted the petition on October 30, 1998, and gave appellant visitation with her daughter one day per week. On July 1, 1999, the court terminated appellant's visitation rights, although it is unclear why that occurred.
On May 16, 2000, appellee filed a petition to adopt Caitlyn. The petition alleged, inter alia, that the natural parents' consent was not required because they had both "failed without justifiable cause" to communicate with their daughter, or to provide for her maintenance and support, for a period of at least one year before the filing of the petition.
Subsequently, Mitchell Potts filed a written consent to his daughter's adoption. The matter then came on for a hearing on September 20, 2000 to determine whether appellant's consent was required. During the proceedings it was uncontroverted that appellant lives on Social Security (SSI) benefits that she receives due to some undisclosed disability. As a result, appellant provides no financial support or other in-kind support for her daughter. Indeed, the Juvenile Court had previously relieved appellant of any support obligation as a result of her lack of income.
The evidence also reveals that appellant had neither seen nor spoken with her daughter since May 15, 1999. Appellant testified, however, that she called her aunt (appellee) frequently and tried to see, or at least to speak with, Caitlyn. Appellant asserts that her efforts were always rebuffed. Appellant's testimony was corroborated by her boyfriend, Donald Grim, who testified that appellant tried unsuccessfully to speak with appellee "about a half dozen or so" times. Appellee denied, however, that she received these calls and further denied that she prevented any visitation between appellant and Caitlyn.
The trial court issued its judgment on September 5, 2001, and determined that appellant's consent to the adoption was not required. The court opined that, although visitation rights had been terminated, appellant could have written a letter or sent a card to Caitlyn, but failed to do so. Further, although appellant was under no court order to pay child support, the court found that appellant had a common-law duty to support her daughter and could have "provide[d] some nonmonetary assistance" but, again, failed to do so. The court thus held that appellant had unjustifiably failed to support or to communicate with Caitlyn, and that the adoption proceeding could go forward without appellant's consent. This appeal followed.[1]
 I
We begin our analysis of this case from the premise that parents have a fundamental liberty interest in the care, custody and management of their children. Troxel v. Granville (2000), 530 U.S. 57, ___, 147 L.Ed.2d 49,56, 120 S.Ct. 2054, 2060; Santosky v. Kramer (1982), 455 U.S. 745, 753,71 L.Ed.2d 599, 606, 102 S.Ct. 1388, 1394-1395. The right to raise one's child is an essential and basic civil right in this country. In re Hays
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, 682-683; In re Murray
(1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171. An adoption, obviously, terminates that right. In re Adoption of Greer (1994),70 Ohio St.3d 293, 298, 638 N.E.2d 999, 1003; also see R.C. 3107.15(A) (1). Therefore, unless a specific statutory exemption applies, children cannot be adopted without the consent of their natural parents. SeeMcGinty v. Jewish Children's Bur. (1989), 46 Ohio St.3d 159, 161,545 N.E.2d 1272, 1274; also see R.C. 3107.06 (A).
One such exception to that rule is set forth in R.C. 3107.07(A) which provides:
 "A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
The party that seeks to adopt a child without parental consent must prove, by clear and convincing evidence, both (1) that the natural parent failed to support or to communicate with the child for the requisite one-year time period, and (2) that the failure was without justifiable cause. In re Adoption of Bovett (1987), 33 Ohio St.3d 102, 515 N.E.2d 919, at paragraph one of the syllabus; In re Adoption of Masa (1986),23 Ohio St.3d 163, 492 N.E.2d 140, at paragraph one of the syllabus.
A finding that parental consent is not necessary for an adoption will not be disturbed on appeal unless it is against the manifest weight of the evidence. See Bovett, supra at paragraph four of the syllabus; Masa,supra at paragraph two of the syllabus. In other words, if the trial court's finding is supported by some competent credible evidence, that decision will not be reversed on appeal. See Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018, 1022; Vogel v. Wells
(1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154, 159; C.E. Morris Co. V.Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus.
We further acknowledge that the trial court, as trier of fact, is obviously in a better position than the appellate court to view the witnesses and to observe their demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the proffered testimony. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742, 745; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Accordingly, we defer to the trial court on issues of weight and credibility. Moreover, a trial court is free to believe all, part or none of the testimony of each witness who appears before it. Rogers v. Hill (1998), 124 Ohio App.3d 468, 470,706 N.E.2d 438, 439; Stewart v. B.F. Goodrich Co. (1993),89 Ohio App.3d 35, 42, 623 N.E.2d 591, 596. It is with these principles in mind that we turn our attention to the merits of appellant's three assignments of error.
 II
We consider the first and second assignment of error together as they both address the trial court's finding that appellant was "not justified in failing to support" her daughter. Appellant argues that the trial court erred in this regard. We agree.
No question exists in the cause sub judice that appellant failed to provide any monetary support or in-kind support for Caitlyn. The evidence on this point is uncontroverted. The real issue, however, is whether that failure was justifiable.
Once it is established that a natural parent has failed to support her child, the burden of going forward with the evidence shifts to that parent to show some facially justifiable reason for the failure. Bovett,supra at 104, 515 N.E.2d at 922. A parent can meet that burden by showing that they are unemployed and have no income. See e.g. In re Adoption ofKessler (1993), 87 Ohio App.3d 317, 323, 622 N.E.2d 354, 358; In reAdoption of Howell (1991), 77 Ohio App.3d 80, 97, 601 N.E.2d 92, 103. In the instant case, appellant's sole source of income is her $512 monthly SSI benefit. She has no job and earns no other income.[2] It is axiomatic that a natural parent's failure to support her child is justified when that parent's financial condition is such that she is unable to support her child. 2 American Jurisprudence 2d (1994) 997, Adoption, § 88. This is a sufficient basis on which to establish a justifiable reason for appellant's failure to support her daughter.[3]
Our conclusion is buttressed by another consideration. The evidence was uncontroverted, and the trial court so found, that a December 29, 1997 Juvenile Court order relieved appellant of her child support obligation. The court recognized that appellant had no job and subsisted solely on SSI benefits. We believe that appellant could have reasonably assumed that this order relieved her of any obligation to provide support of any kind. If this was not the case, and if appellant did risk the loss of her parental rights by complying with that order, we believe that notions of fundamental fairness require that appellant be provided notice to that effect. In any event, we believe that the 1997 Juvenile Court order that relieved appellant of her support obligation provides justification for appellant's failure to support Caitlyn.[4]
The trial court rejected appellant's arguments for several reasons. First, notwithstanding appellant's inability to provide any financial support, the court held that appellant could have provided Caitlyn non-monetary assistance or in-kind support. The court cited our decision in In re Adoption of McNutt (1999), 134 Ohio App.3d 822, 732 N.E.2d 470, as authority for the proposition that a parent's failure "to provide some nonmonetary assistance" when the parent had the means to do so is tantamount to an unjustifiable failure to provide support. We disagree with this interpretation of the decision, however. In McNutt, we held that a father who, though not subject to any court-imposed support order, provided diapers, food and clothing for his daughter during visitations provided sufficient non-monetary support to defeat the operation of R.C. 3107.07(A). Id. at 831; 732 N.E.2d at 476. Although providing in-kind support may defeat operation of the statute, the converse is not always true (i.e. failure to provide such support will obviate the need for parental consent). For example, if a natural parent is without the means to provide in-kind support, he or she would have a justifiable reason for not doing so. This appears to be the case here. As mentioned previously, appellant subsists on $512 per month in SSI benefits. We find no evidence adduced below that appellant could provide in-kind support for her daughter in light of her meager income. Moreover, we again note that the trial court expressly relieved appellant of her support obligation. Thus, appellant could reasonably believe that she had no responsibility to provide support in any manner. Furthermore, we note that most of the adoption consent cases that involve in-kind support are cases in which a parent has failed to make court ordered monetary support payments, but did contribute some amount of in-kind support. Some courts have concluded that this minimal effort can defeat an assertion that the parent failed to provide financial support. Once again, however, in the instant case we note that no court ordered appellant to make child support payments.
The second basis on which the trial court rejected appellant's argument that she justifiably failed to support Caitlyn was that appellant resided with her boyfriend, with whom she shared expenses, and that she thus should have had the ability to provide Caitlyn with some degree of support. We have found no evidence, however, regarding the couple's monthly living expenses and other financial considerations. Moreover, we again point out that, even if appellant occasionally had "extra" money, the Juvenile Court order established that she owed no support. We believe that appellant had no reason to believe that she must provide support or risk the loss of her parental rights.
Finally, the trial court held that, regardless of the Juvenile Court's order that relieved appellant of any support obligation, appellant still had an independent common-law duty to support her daughter. We disagree.
Neither the trial court nor the appellee cite any authority to support the proposition that appellant was required to make support payments after the Juvenile Court relieved her of that responsibility. We have found several adoption cases stemming from divorce proceedings that rejected similar arguments. See e.g. In re Adoption of Thiel (Feb. 23, 1999), Hardin App. No. 6-98-12, unreported; In re Adoption of Jarvis
(Dec. 11, 1996), Summit App. No. CA17761, unreported. We agree with these cases and adopt that reasoning.
There is no question that parents have a duty to support their children. See generally Haskins v. Bronzetti (1992), 64 Ohio St.3d 202,203, 594 N.E.2d 582, 584; State ex rel. Wright v. Industrial Commission
(1943), 141 Ohio St. 187, 47 N.E.2d 209, at paragraph one of the syllabus. In divorce cases, however, the Ohio Supreme Court has held that this duty is superseded by the statutory child support provisions. SeeMeyer v. Meyer (1985), 17 Ohio St.3d 222, 224, 478 N.E.2d 806, 808. Thus, custodial parents are not entitled to receive support payments from non-custodial parents on the basis of a general duty of support when no support order was issued at the time of the custody award. Id. at the syllabus. The Thiel and Jarvis courts essentially carried this rule into adoption cases and held that when a domestic relations court ordered no support be paid by the non-custodial parent, that order superseded the common law duty of support. Thus, a petitioner seeking to adopt a minor child could not exploit the non-custodial parent's compliance with that order in order to establish an unjustifiable failure of support under R.C. 3107.07.
Likewise, we find that in the case sub judice the Juvenile Court's order to relieve appellant of her support obligation superseded appellant's general duty to support Caitlyn. The parameters of a parent's general duty to support are not specifically defined by statute or by common law. This Court would be hard pressed to precisely explain the amount and the type of support that appellant would be obligated to provide to her daughter after the Juvenile Court relieved her of any financial obligation. If we cannot provide a definitive standard for this duty, then it is unrealistic to expect that appellant (a lay person receiving SSI benefits and described below as a "slow learner") could ascertain precisely what was required of her. Moreover, as we previously mentioned, fundamental fairness requires that appellant be informed that she had some duty to support Caitlyn, above and beyond the Juvenile Court order, and that her failure to provide support could result in the loss of her parental rights.
The reasoning behind R.C. 3107.07(A) is to allow adoptions when non-consenting parents have abandoned and lost interest in their children. Jarvis, supra; In re Adoption of Mackall (Apr. 24, 1985), Medina App. No. 1365, unreported. We readily acknowledge that in the instant case, appellant's involvement with her daughter has been almost non-existent. We are not persuaded, however, that this situation was tantamount to abandonment. This is particularly true in view of the fact that the trial court terminated appellant's support obligation and visitation rights. In construing the adoption statutes, the Ohio Supreme Court has noted that any exception to the requirement of parental consent must be strictly construed so as to protect the natural parent's right to raise and nurture their children. Greer, supra at 300,638 N.E.2d at 1005; In re Adoption of Schoeppner (1976), 46 Ohio St.2d 21, 24,345 N.E.2d 608, 610. Given that admonition, and when we consider appellant's disability, lack of a job, meager monthly SSI benefits, and the fact that the trial court properly relieved her of her court ordered support obligation, we find sufficient evidence to establish that appellant justifiably failed to support Caitlyn.
We therefore sustain appellant's second assignment of error. We overrule her first assignment of error, however, wherein she invites us to rule, as a matter of law, that parents who receive SSI benefits have justifiable cause to fail to support their children. This is not our holding and our decision herein should not be construed in that fashion. Adoption cases are all fact specific and turn on the particular facts and circumstances present in each case. Further, our ruling in the case at bar is based on more than appellant's receipt of SSI benefits. In any event, for these reasons we overrule appellant's first assignment of error. Appellant's second assignment of error, however, is well-taken and is hereby sustained.
 III
Appellant argues in her third assignment of error that the trial court erred by finding that appellant failed to communicate with her daughter without justifiable cause. We agree.
To begin, we note that the trial court terminated appellant's visitation rights with Caitlyn in the summer of 1999.[5] Appellant testified that she attempted to telephone appellee on several occasions in order to speak with Caitlyn, but that appellee prevented any contact with Caitlyn. Donald Grim, appellant's boyfriend, corroborated this testimony. Appellee denied receiving most of these phone calls. However, as indicated in the following portion of the transcript, appellee did admit that she received one call and then denied appellant the opportunity to speak with Caitlyn:
 "Q. Can you outline for the court what if any phone conversations you've had with Ms. Payne since May 15th of 1999?
 A. Melissa did contact me on February the 7th in the evening; she wanted to speak with Caitlyn, and I told her no.
THE COURT. What year was that?
THE WITNESS. This year, 2000, I'm sorry.
Q. [by counsel]. And what time was that phone call?
A. 6:30, seven o'clock in the evening.
Q. All right. Was the child home at the time?
A. Yes, she was.
 Q. And what if anything did you tell Ms. Payne in regard to her speaking with the child?
 A. I tried to explain to Melissa that Caitlyn didn't have any knowledge of who she was, and I was afraid it would confuse her.
* * *
 Q. All right. Now, it's your testimony that on February 7th of this past year, 2000, Ms. Payne did contact you and spoke to you and asked to speak with Caitlyn, is that right?
A. Yes.
Q. And you said no?
A. Right.
 Q. And isn't it true that Ms. Payne also has called you at work and asked to arrange for visits:
A. No, she has not.
Q. And she has not called you at your house?
A. No. Only on February the 7th.
Q. And you told her no, on that occasion?
A. Yes, I did.
Q. Now, how old is Caitlyn?
A. Three and a half.
* * *
Q. Does she talk on the phone now?
A. Yes.
Q. Was she able to talk on the phone in February?
A. Sure.
 Q. But you still said that Melissa Payne could not talk to her:
 A. That's right. I was only doing what I thought was best for Caitlyn."
The Ohio Supreme Court held that, "[p]ursuant to the explicit language of R.C. 3107.07(A), failure by a parent to communicate with his or her child is sufficient to authorize adoption without the parent's consentonly if there is a complete absence of communication for the statutorily defined one-year period." (Emphasis added) In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 481 N.E.2d 613, at paragraph two of the syllabus.
But for appellee's actions to prevent appellant from speaking with Caitlyn on February 7, 2000, a complete absence of communication between mother and daughter would not have occurred during the one year time frame. See R.C. 3107.07(A). Thus, the adoption may not proceed without appellant's consent.
We note that a non-custodial parent has justifiable cause to fail to communicate with her child when the child's custodian interferes with the communication. See In re Adoption of Hupp (1982), 9 Ohio App.3d 128,131-132, 458 N.E.2d 878, 883-884. In light of the evidence in the casesub judice, we believe that appellant's failure to communicate with her daughter was justifiable. Appellee, to her credit, candidly admitted that on one occasion that she thwarted appellant's effort to communicate with Caitlyn. Had appellant spoken with Caitlyn on that occasion, the requirement of a "complete absence of communication," in order to invoke R.C. 3107.07(A), would not have been satisfied.
For these reasons, we hereby sustain appellant's third assignment of error.
 IV
In conclusion, we note that this opinion should not be construed as a comment on the underlying merits of the adoption or whether an adoption is in Caitlyn's best interests. Testimony by Kathy Alfred, Caitlyn's previous guardian ad litem, suggests that appellant lacks sufficient parenting skills. The record also indicates that appellee has provided Caitlyn with excellent care. Rather, our ruling speaks solely to the issue of appellant's consent for adoption. Thus, we find that the evidence adduced below established "justifiable cause" for appellant's failure to support and to communicate with Caitlyn for the one year period prior to the adoption petition's filing. Therefore, having sustained the second and third assignments of error, we hereby reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that the case be remanded for further proceedings consistent with this opinion. Appellant shall recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion
[1] We note that although the adoption proceeding has yet to be resolved, the order being appealed herein is final and appealable pursuant to R.C. 2505.02. Thus, we have jurisdiction to review the matter under Section 3(B)(2), Article IV of the Ohio Constitution. See In reAdoption of Greer (1994), 70 Ohio St.3d 293, 638 N.E.2d 999, at paragraph one of the syllabus.
[2] Evidence introduced below indicates that appellant may have worked other odd jobs in the area for extra money. However, she denied working those jobs and the trial court's September 5, 2001 judgment made no reference to any income other than her SSI benefits. We therefore presume that the SSI benefit is the only income that the court attributed to her.
[3] We parenthetically note that a line of case law exists from the Second District Court of Appeals which holds that, when a child's needs are adequately provided for by a custodian who is in a better financial position than the natural parent, and the custodian expresses no interest in receiving any financial assistance from the natural parent, the natural parent's failure to support the child is not without justifiable cause. See In re Adoption of LaValley (Jul. 9, 1999), Montgomery App. No. 17710, unreported; In re Adoption of Hadley (May 6, 1991), Greene App. No. 90CA117, unreported. In the case at bar, appellee testified that she is employed and that she did not send medical bills to appellant or ask for any monetary assistance. That evidence is arguably sufficient, under the LaValley and Hadley cases, to establish a further "justifiable reason" for appellant to not provide any further support for her daughter. However, we do not rely on these cases in the instant case as a basis to sustain appellant's assignments of error.
[4] We must indicate that we do not disagree with the Juvenile Court's decision to relieve appellant of any financial child support obligation. Obviously, that decision was proper in light of appellant's financial circumstances.
[5] We acknowledge that evidence was introduced to show that appellant missed her last scheduled visitation for May 22, 1999. However, the parties also stipulated that her visitation rights were terminated in July of that year. Thus, for most of the one year period prior to the filing of the adoption petition, appellant had no visitation rights to exercise.