[Cite as *In re Adoption of A.R.A.*, 2023-Ohio-3606.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

IN THE MATTER OF:

THE ADOPTION OF: A.R.A.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CA 0969**

---

Civil Appeal from the
Court of Common Pleas, Probate Division of Carroll County, Ohio
Case No. 20225010

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Rhonda G. Santha*, 6401 State Route 534, West Farmington, Ohio 44491, for Appellant

*Atty. Herbert J. Morello*, Morello Law Offices Ltd., 700 Courtyard Centre, 116 Cleveland Avenue, NW, Canton, Ohio 44702, for Appellee

Dated: September 28, 2023

**WAITE, J.**

{¶1} Appellant-Father appeals a June 15, 2023 judgment entry of the Carroll County Court of Common Pleas, Probate Division in which the trial court determined that Appellant's consent was not necessary before allowing Appellee-Maternal Grandmother to adopt the minor child in this matter, A.R.A. Appellant argues that a civil protection order prevented him from contacting the child in the one-year look back period prior to the filing of the adoption petition. He also alleges the court failed to consider his participation in a custody proceeding that occurred during the relevant time period. For the reasons that follow, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellant and the natural mother ("Mother"), who is now deceased, had a child together, A.R.A., on September 8, 2018. Appellant and Mother were unmarried but had been living together for a short period of time. When the child was three months old, Mother and Appellee obtained a protection order against Appellant after several instances of physical violence, including one incident where Appellant assaulted Mother while she was holding A.R.A. Mother obtained the protection order on January 7, 2019 and it provided: "ALL TERMS OF THIS ORDER SHALL REMAIN IN EFFECT FOR A PERIOD OF FIVE YEARS FROM ISSUANCE, OR UNTIL 1/7/2024 unless earlier modified or terminated by order of this Court." (Ex. A) The order noted that Appellant had several serious felony convictions and may have possession of a hidden weapon despite his weapons disability. The order protected Mother, A.R.A., Appellee, and Mother's older

child, who is not involved in the instant proceeding.  Appellant has not seen A.R.A. since the protective order was filed.

{¶3}    After Mother died, Appellee obtained physical custody and was named legal guardian of A.R.A.  This was almost two years after the protection order was filed.  The custody arrangement resulted from Appellee's motion seeking to establish paternity and custody.    During those proceedings, the parties agreed that Appellant could be considered for visitation with A.R.A. if he could produce a seven-panel toenail negative drug test to be conducted at Arcpoint Labs of Cuyahoga Falls.  (10/10/21 J.E.)  If he could pass a single test, the court agreed to revisit the issue of supervised visitation with the apparent goal of allowing future custody.

{¶4}    Appellant took seven drug tests during the allocated time period, and these results were admitted into evidence.  Each of these tests were positive for one or more of the following drugs:  cocaine, THC, Norcocaine, and Benzodiazepines.  Appellant took some of these tests at facilities other than the specific lab ordered by the court because he thought employees of the agreed lab had somehow conspired against him.  He also took some of the tests by submitting a urine sample, which was not a method approved by the court.

{¶5}    On December 16, 2022, Appellee filed a petition of adoption.  She asserted that Appellant's consent was not required, as he had no more than *de minimus* contact with the child in the year preceding the petition.  The petition was filed more than a year after the custody agreement was filed.  Appellant was served with notice of the petition at his last known address and a person with his same last name signed for the certified mail.  However, the person who signed the certificate was Appellant's sometime girlfriend, who

happened to have his same last name. Appellant and the woman were not seeing each other at the time she signed the certificate, and he alleges that she was unable to contact him or otherwise notify of him of the notice. However, once Appellant and the woman resumed their relationship sometime in February of 2023, she told him about the certified mail. Appellant filed a handwritten response to the court on February 28, 2022, contesting the adoption.

{¶6}   On May 30, 2023, the court held a hearing addressing, first, whether Appellant had timely objected to the adoption and, second, whether he had more than *de minimus* contact with the child during the preceding year. Although the timeliness of the objection is not at issue here, the court found that while Appellant could have filed his objection sooner, because permanent loss of custody is the functional equivalent of the death penalty it would accept his objection.

{¶7}   At the hearing to determine whether Appellant's consent was necessary, both parties presented evidence in the form of physical documents and witness testimony. Although Appellant argued the protection order prevented him from contacting or visiting the child during the relevant time period, evidence was introduced that the protection order specifically provided it could be modified or terminated prior to the expiration date pursuant to a court order. Appellant initially testified that he did not believe he could have the order terminated early, but he later admitted he had discussed this issue with an attorney and knew early termination was possible. (Hrg., p. 110.) He also testified to his belief that the October 10, 2021 court order which had ordered his drug testing served to negate the protection order. He was asked if he felt the protective order fully prevented him from any contact with the child. Appellant replied "[n]o, because I was, they was

going to let me see her, prior to the, 'cause why, you know, I just had to pass this drug test. So I wasn't thinking that [the protection order] would even mean anything." (Hrg., p. 100.)

**{¶8}** As to the order regarding drug testing, Appellant explained that he changed testing facilities even though the order contained a specific testing location because he believed employees of the ordered lab were conspiring against him. He claimed that his tests at this lab showed increasing levels of drugs in his system despite his claim that he had used no drugs. Later, he admitted he used marijuana, but claimed that his medical marijuana card permitted such use, even though the card had expired prior to his last few drug tests. He claimed he did not think this was a problem. He did not explain the presence of drugs other than marijuana, which were found at high levels in his samples. He also submitted urine samples at least twice despite the fact that the court specifically ordered a seven-panel toenail sample. He conceded that he was aware a urine sample may result in more favorable results, as it would detect only drugs taken within a three-day period. However, even the urine tests he submitted had tested positive.

**{¶9}** On June 15, 2023, the court determined, based largely on Appellant's own testimony, that his consent to adoption was not required because he had less than *de minimus* contact with the child without justifiable cause. Regarding the protection order, the court cited to the order itself, which contained language that it could be modified or terminated prior to the expiration date. The court also cited Appellant's testimony conceding that he knew about this language, but took no steps to modify or terminate the order. As to the prior custody case, the court relied on the fact that Appellant knew he was required to pass only a single drug test to obtain visitation with the child, and yet

could not produce even one negative test. The court attributed fault to Appellant for failing to refrain from drug use in order to obtain visitation, noting that Appellee took no intentional actions to bar Appellant's visitation. Appellant timely appeals the court's determination that his consent to adopt was not necessary.

General Law

{¶10} An appellate court will not disturb a trial court's decision on an adoption petition unless it is against the manifest weight of the evidence. *In re D.R.*, 7th Dist. Belmont No. 11 BE 11, 2011-Ohio-4755, ¶ 9, citing *In re Adoption of Masa*, 23 Ohio St.3d 163, 492 N.E.2d 140 (1986). A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). Similarly, a reviewing court must not substitute its judgment for that of the trial court where some competent and credible evidence supports the judgment. *Myers v. Garson*, 66 Ohio St.3d 610, 614 N.E.2d 742 (1993).

{¶11} When a petition of adoption is filed, generally the petitioner must obtain the written consent of the natural mother and father. R.C. 3107.06. Certain exceptions to this rule are described in R.C. 3107.07. Relevant, here, is R.C. 3107.07(A) which provides the following:

> A parent of a minor, when it is alleged in the adoption petition and the court, after proper service of notice and hearing, finds by clear and convincing evidence that the parent has failed without justifiable cause to provide more than *de minimis* contact with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period

of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner.

**{¶12}** "Because the burden of proof ultimately remains with the adoption petitioner, once a natural parent has 'presented facially justifiable reasons' for his or her failure to support the child, the burden shifts back to the petitioner to show that the natural parent's justifications are illusory." *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 33, citing *In re Adoption of B.B.S.*, 2016-Ohio-3515, 70 N.E.3d 1, ¶ 22 (4th Dist.); *In re Adoption of Kessler*, 87 Ohio App.3d 317, 324, 622 N.E.2d 354 (6th Dist.1993).

**{¶13}** "*De minimis* contact is not defined only as physical visitation with a child. Other forms of contact and support including gifts, cards, letters, financial support and telephone calls are also considered." *In re Petition for Adoption of A.M.D.*, 7th Dist. Mahoning No. 16 MA 0052, 2016-Ohio-6976, ¶ 17.

**{¶14}** The term "justifiable cause" has been defined as "[c]apable of being legally or morally justified; excusable; defensible." *In re E.W.H.*, 4th Dist. Meigs No. 16CA8, 2016-Ohio-7849, ¶ 33, citing *In re Adoption of B.B.S., supra*, at ¶ 16 (4th Dist.); quoting Black's Law Dictionary (8th Ed.2004) 882.

ASSIGNMENT OF ERROR

The Carroll County Probate Court erred in its finding that the lack of Appellant's contact with minor child was "without justifiable cause."

**{¶15}** Appellant contends that the protection order, which remains in effect, prevented him from contacting the child during the one year period prior to Appellee's filing of the petition for adoption. He then contradicts the essence of that argument,

asserting that a subsequent custody agreement exists allowing him visitation conditioned on passing a single drug screen. He claims that the court failed to consider his efforts to participate in that custody agreement by taking at least seven drug tests to satisfy the terms of the agreement, wrongfully continuing to deny him visitation.

**{¶16}** Appellee responds that a trial court is given great discretion in determining whether there has been *de minimus* contact with the child and, if not, whether there has been justifiable cause to excuse lack of contact. Appellee contends Appellant, alone, is responsible for his failure to contact A.R.A. Appellant conceded at the hearing that passing a drug test, which he was given a year to accomplish, was his sole roadblock to visitation and, later, custody. Despite taking seven tests, Appellant was unable to pass a single drug test. As his failure to contact A.R.A. was without justifiable excuse, Appellee maintains there was no abuse of discretion when the court determined that Appellant's consent was not required for her to adopt.

**{¶17}** Appellant relies on a case arising from the Ninth District where the court determined that a protection order provided justifiable cause for the appellant's lack of contact with the minor child. *In re Adoption of B.A.A.*, 9th Dist. Wayne No. 16AP0073, 2017-Ohio-8137. However, Appellant fails to mention that the appellant in that case did move to modify the protection order. *Id.* at ¶ 17. The petition for adoption in that case was filed one month after the appellant's attempt to modify the protection order, and the order in *B.A.A.* was not based on the appellant's physical violence. *Id.* at ¶ 18. Instead, he had been harassing the victim through text messages and appearing at her residence and workplace despite being told to stop. Here, the order stemmed from Appellant's physical violence, including one instance where he assaulted the child's mother while she

was holding the infant A.R.A. Despite Appellant's arguments, *B.A.A.* is factually distinguishable from the instant matter.

{¶18} Appellant also cites to *In re Adoption of M.G.B.-E.*, 154 Ohio St.3d 17, 2018-Ohio-1787, 110 N.E.3d 1236. Appellant explains the Supreme Court held that a parent's actions in filing custody motions must be taken into consideration when determining whether justifiable cause for failure to contact exists. However, the Supreme Court held in that case that while custody motions and other related filings are to be considered, they are not a determinative factor. *Id.* at ¶ 40.

{¶19} The *M.G.B.-E.* Court explained that because these matters are factually determinative, a close look at the custody motion was required, particularly as the mother of the children violated court orders by failing to bring the children to court appointed visitation and had taken other efforts to impede the appellant's parenting time. Those intentional efforts included actions by the mother to change the children's last name without informing the appellant, changing her telephone number without informing the appellant or the domestic relations court, and moving residences without providing the new address. *Id.* at ¶ 44. The appellant had also taken efforts to learn where the children attended school and made an effort to establish his presence in their lives. *Id.* at ¶ 46.

{¶20} The facts of *M.G.B.-E.* are completely distinguishable from those in the instant case. Significantly, Appellant fails to note that the trial court did, in fact, take into consideration the prior custody filing. The court determined that participating in the custody motion filed by Appellee was Appellant's sole effort towards contacting his child. The court discussed the fact that as a result of this proceeding, Appellant's only obstacle in visiting his child was to produce a single negative drug test. The court decided it was

Case No. 23 CA 0969

Appellant's own fault that he could not pass a drug test despite his knowledge that if he was successful, he would obtain visitation and perhaps custody. Thus, despite being given a clear path to visitation, Appellant was stopped only by his own actions.

**{¶21}** At the hearing, Appellant made several excuses as to why he did not produce a negative test, including a claim of a conspiracy against him and reliance on an expired medical marijuana card. Even if Appellant's arguments regarding the medical marijuana card somehow excused his marijuana use, it did not explain the other drugs found in his system (cocaine, norcocaine, and benzodiazepines). Appellant also violated multiple terms of the court's order by testing at a facility not authorized by the court and submitting a type of test not approved by the order.

**{¶22}** Also significant is Appellant's lack of any other attempt to establish a relationship with the child. Even though he knew that the protection order could be modified or terminated, he did not attempt this, by his own admission. Unlike *M.G.B.-E.,* there is no evidence that Appellant made any other attempt to establish his presence in the child's life or evidence that any person (other than Appellant himself) intentionally acted to interfere with any attempt to establish a relationship. Also of note, the reason for the protection order was to prevent physical violence by Appellant, as there was at least one instance where he placed the child in danger of physical injury as an infant.

**{¶23}** Based on this record, there is no evidence aside from a single custody agreement (with which Appellant made no real attempt to comply) to demonstrate justifiable cause to excuse Appellant's failure to have even *de minimus* contact with the child. Appellant himself admitted the protection order could have been modified or terminated but he took no action to explore that option. He also admitted that the

protection order was ultimately of no concern as the custody agreement provided him a path to visitation. Appellant's assignment of error is without merit and is overruled.

## Conclusion

**{¶24}** Appellant argues that a civil protection order prevented him from seeing the child, and that he had filed a motion to obtain custody, which should have been given more weight by the trial court prior to deciding his consent to adoption was not required. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, J. concurs.

Hanni, J. concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Carroll County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**